IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| IAN McELROY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 00-6318-HO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CITY OF CORVALLIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff has filed several actions in both state and federal court with respect to the subject matter of this case. Defendants seek summary judgment for the fourth time or in the alternative to dismiss.

The case arises from the development plan for the Rivergreen Office Park in Corvallis. Plaintiff was a managing member of the Rivergreen Office Park, LLC until approximately February 22, 1999. Plaintiff alleged, in the first complaint, sixteen claims against the City of Corvallis, Lee March (Corvallis building official), Ken Gibb (Corvallis development director), Jon Nelson (Corvallis City

Manager), Scott Fewel (Corvallis city attorney), and James Brewer (Corvallis city attorney):

(1) Defendants violated plaintiffs' right to receive a certificate of occupancy;

(2) Defendants extorted, coerced, and threatened the plaintiffs;

(3) Defendant March unlawfully threatened McElroy with civil citations;

(4) Defendants deprived plaintiffs of their right to equal protection of the law;

(5) Defendants acted in a manner intentionally designed to cause McElroy severe emotional distress;

(6) Defendants deprived the plaintiffs of their procedural due process rights;

(7) Defendants City of Corvallis, March, Fewel, and Brewer abused their power;

(8) Defendants City, March, Fewel, and Brewer abused the legal process;

(9) Defendant March committed defamation, libel, and slander;

(10) Defendants discriminated against McElroy, violating his right to equal protection;

(11) Defendants City, March, Nelson, Fewel, and Brewer fraudulently filed two lawsuits against McElroy;

(12) Defendants City, March, Fewel, and Brewer committed perjury and perpetrated a fraud upon the court;

(13) Defendants City, March, Fewel, and Brewer interfered with plaintiffs' business relations;

(14) Defendants City, March, Fewel, and Brewer interfered with plaintiffs' contractual relations;

(15) Defendants City, March, Fewel, and Brewer had conflicts of interest; and

(16) Defendants conspired to violate plaintiffs' constitutional rights.

Defendants moved for summary judgment against all of the claims (#17). The court granted the motion on the basis of <u>Younger</u> abstention. The Ninth Circuit reversed. Upon remand, defendants again moved for summary judgment but the court allowed plaintiff to combine the allegations and claims in the above complaint with the allegations in the second complaint.

In his second complaint, plaintiff alleged eight counts:

1. Right to obtain certificate of occupancies on behalf of the LLC.
2. Violation of equal protection.
3. Violation of federal and state laws.
4. Deprivation of federal constitutional right to due process.
5. Abuse of power.
6. Abuse of process.
7. Interference with business and contractual relations.
8. Continuing acts of conspiracy.

Defendants moved for summary judgment as to all counts, but plaintiff was given another chance to file an amended complaint with all of his claims in one complaint.

Plaintiff then filed a somewhat incoherent 69-page third amended complaint alleging a chronology of events beginning in mid-1995 and going through December, 2003. Plaintiff then alleged violations of 42 U.S.C. § 1983:[1]

1. "Retaliation of Citizen Ian McElroy for exercising his right under the First Amendment."

2. "Personal Malice by the City and its officials ... when Ian McElroy stood up to them ...."

3. Violations of Equal Protection.

4. "Violations of both substantive and procedural due process where Ian McElroy had legal standing and legal rights to due process ... the defendants purposefully hindered, frustrated, prevented and denied every attempt to access the only venue created by statute for an appeal of the ... matters concerning the actions by the defendants to deny permits, certificates and appeals."

5. "Interference with business and contractual relations where the defendants engaged in acts to cut Ian McElroy out of the picture ... by making deals with McElroy's business partners ...."

---

[1]Much of which appeared to be attempts to allege state law claims.

6. "Defamation where the defendants lied to Ian McElroy's business/construction industry associates about events, activities, actions concerning Ian McElroy and his responsibilities in an effort to undermine McElroy's efforts to bring remedy to the unlawful acts and damages that the defendants were causing him."

7. "Fraud where defendants engaged themselves in acts of fraud that lead to a no-contest plea, to the demise of McElroy, when they had already filed pleadings with the court to release Ian McElroy as the named defendant in their criminal prosecution of him."

8. "Abuse of process and abuse of power where the City defendants had the power and duty to administer and enforce the applicable laws properly and evenhandedly, and specifically where the Corvallis building official, defendant Lee March, has the power of law enforcement officer with the duty to interpret the building codes consistent with the intent and purpose of the building code, the defendants maliciously abused and exceeded the limited powers to deny Ian McElroy his rights to the lawful remedies he sought under the building codes ...."

9. "Conspiracy where the defendants knowingly worked together in acts contrary to state and local laws to purposefully frustrate, deny and violate the legal processes for issuing permits and certificates, issuing

criminal citations and then prosecution, scheduling appeals, accepting surety bonds."

Defendants filed a motion to strike the third amended complaint. At the hearing on this motion, plaintiff indicated that he had obtained an attorney and, therefore, the court allowed him to file a fourth amended complaint and denied the motion to strike as moot.

Unfortunately, the Fourth Amended Complaint is also difficult to comprehend. Only the caption refers to a cause of action, 28 U.S.C. § 1983 (meant to be 42 U.S.C § 1983). The complaint lists background from 1995 until the filing of the complaint in October of 2000. The complaint also reiterates subsequent facts regarding further attempts to obtain certificates of occupancy including the eventual grant of the certificates. There are various allegations indicating violations of the Uniform Building Code, the Land Development Code, the ADA, etc. The gist of the complaint appears to be that the defendants would stop at nothing to deny plaintiff a certificate of occupancy for his building project and retaliated against plaintiff for his decision to take legal action. The Fourth Amended complaint removed Ken Gibb as a defendant, but plaintiff's counsel now claims this was error and intends Gibb to remain a defendant.[2]

---

[2]However, the body of the Fourth Amended complaint does not refer to Gibb.

Defendants again move for summary judgment (#159) or alternatively to dismiss (#172). Plaintiff has filed a motion for sanctions related to defendant's motion to dismiss.

A.  Summary Judgment and Dismissal Motions

Plaintiff now apparently alleges several section 1983 claims out of all the allegations in the preceding complaints, but fails to separate them into discrete claims. Plaintiff's counsel states the basis of the complaint is as follows:

> The Plaintiff filed this lawsuit because the defendants have intentionally violated the plaintiff's rights. The defendants engaged in a pattern behavior to retaliate against the plaintiff because they were displeased when he challenged their position regarding the Oregon Specialty Structural Code ("OSSC") and the Americans with Disabilities Act ("ADA")....
>
> The defendants intentionally violated the plaintiff's rights by refusing to provide him administrative hearings to resolve the plaintiff's OSSC and ADA disputes, making intentionally misleading and false statements during related legal proceedings, and by criminally charging the plaintiff for violation of the OSSC. The defendants also violated the plaintiff's rights by treating him differently from other people in the same situation; they refused to issue him occupancy permits when he the law required they were issued, refused to accept bond when requested, and refused to treat him as the applicant on the construction project when it was convenient to defendants.

Plaintiff's Memorandum Opposing Defendant's Motion for Summary Judgment (#174) at p. 4-5.

In the memo, plaintiff finally reveals his claims: (1) Procedural Due Process; (2) Substantive Due Process; (3) Equal Protection; and (4) the First Amendment.

7 - ORDER

42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To make out a cause of action under section 1983, plaintiff must prove that (1) the defendants acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes. See Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986).

### 1. Procedural Due Process

The complaint itself is ambiguous as to how defendants violated plaintiff's due process rights, but it does reference due process violations in regard to the certificates of occupancy. In his memo, plaintiff contends that he met the criteria for a temporary certificates of occupancy, that defendants improperly denied the certificates and refused to allow him an administrative appeal in violation of his due process rights.

Plaintiff is vague about his procedural due process rights and often makes conclusory allegations that defendants did not have discretion with respect to the certificates and that the defendants forced plaintiff into improper venues with incorrect standards of review.

8 - ORDER

The Uniform Building Code indicates that a temporary certificate may be issued under certain circumstances and does not indicate that the certificate must be issued. See Uniform Building Code § 109.4. Plaintiff argues that because the code as a whole is to provide for public safety, then so long as the building is safe, the certificate must issue. Plaintiff's argument makes little sense in light of the use of the word "may" in section 109.4 of the code.

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." To have a "property" interest entitled to Fourteenth Amendment procedural protection "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Id.

The mere existence of reasonable procedures entitling a person to a hearing under state law does not give rise to an independent substantive liberty interest protected by the Fourteenth Amendment. Olin v. Wakinekona, 461 U.S. 238, 250-51 (1983).

9 - ORDER

As noted above, the code does not provide a legitimate claim of entitlement to the certificate as it only states that the building official *may* issue a temporary certificate of occupancy if the official finds no substantial hazard will result. Uniform Building code § 109.4. Thus, plaintiff does not have a protected property interest subject to the Fourteenth Amendment. See, e.g., Spence v. Zimmerman, 873 F.2d 256, 259 (11th Cir. 1989) (No property interest where building code states that a TCO "may" be issued). Moreover, plaintiff already sought to compel issuance of temporary and final certificates of occupancy by way of a writ of mandamus filed in Benton County, Case No. 98-10434 (McElroy v. March). The Court dismissed the case and declined to issue the writ requiring the certificates to issue.[3]

Plaintiff also vaguely refers to the denial of a liberty interest protected by the Fourteenth Amendment by defendants regarding his reputation. Plaintiff concedes, however, that the deprivation must occur in conjunction with the deprivation of a

---

[3]Plaintiff argues that this decision is not entitled to preclusive effect because the court allowed him to replead his declaratory judgment action. However, the court dismissed the mandamus with prejudice adopting defendant's interpretation of the statute as discretionary and the declaratory judgment involved only the citations issued to plaintiff for occupying the building without the certificate.

10 - ORDER

tangible interest, i.e., the right to the certificate of occupancy. As noted above, the issuance of the certificate was discretionary.[4]

The motion for summary judgment is granted as to plaintiff's procedural due process claim.[5]

## 2. Substantive Due Process

Substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. 739, 746 (1987). To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property. See Jeffries v. Turkey Run Consol. Sch. Dist., 492 F.2d 1, 4 (7th Cir. 1974).

In this case, plaintiff contends that the City of Corvallis criminally prosecuted him for building code violations despite the fact that the law only allowed for civil penalties. Plaintiff also argues that plaintiff was not the proper party against whom the building code violation should have been leveled, rather the

---

[4]Moreover, plaintiff fails to identify false or stigmatizing statements in connection with the denial of the temporary certificates.

[5]Plaintiff argues at the outset of his brief that summary judgment is premature because there has been very little discovery. However, the statute and issue preclusion demonstrate defendants are entitled as a matter of law to summary judgment and no further factual development is necessary.

11 - ORDER

building owner (Rivergreen Office Park, LLC) was the proper party. Plaintiff then concludes that all of these actions violated his substantive and due process rights. Plaintiff contends that he "was also damaged by being deprived of the bail amounts for the citations, and consequential effects of the defendants' actions that caused him significant economic loss."

To sustain a substantive due process claim, a plaintiff must show that he was deliberately and arbitrarily, capriciously or for an improper motive deprived of a "fundamental" right or interest worthy of substantive due process protection. Homar v. Gilbert, 89 F.3d 1009, 1021 (3d Cir. 1996); Moulton v. City of Beaumont, 991 F.2d 227, 230 (5th Cir. 1993); Rymer v. Douglas County, 764 F.2d 796, 802 n. 5 (11th Cir. 1985). The concept of substantive due process is properly reserved for "truly egregious and extraordinary cases." Myers v. Scott County, 868 F.2d 1017, 1019 (8th Cir.1989). The Supreme Court has cautioned against expanding the concept of substantive due process. See Collins v. City of Harker Hts., 503 U.S. 115, 124 (1992); Bowers v. Hardwick, 478 U.S. 186, 195 (1986). Fundamental rights are those "implicit in the concept of ordered liberty," Bowers, 478 U.S. at 191-92, the deprivation of which would imperil "our democratic society and its fundamental freedoms." McKinney v. Pate, 20 F.3d at 1561.

Plaintiff's argument in support of his assertion that he was criminally prosecuted is unclear. Plaintiff refers to concepts like "no-contest" pleas and bail and notes citations to the Oregon

12 - ORDER

Code of Criminal Procedure, but I fail to see how citation for an administrative violation leads to his claim of criminal prosecution. Moreover, plaintiff fails to show how the protections that would be offered in a criminal prosecution as opposed to an administrative hearing for code violations violates due process given the increased procedural protections.

Plaintiff's argument simply fails to demonstrate he was deliberately and arbitrarily, capriciously or for an improper motive deprived of a "fundamental" right or interest worthy of substantive due process protection. Plaintiffs argument that he was not the proper party to receive the citation comes close, but Corvallis Municipal Code, § 5.03.010.060 provides that a person is liable for conduct constituting an offense which he performs or causes to be performed in the name of or on behalf of a corporation to the same extent as if such conduct were performed in his own behalf. Plaintiff fails to demonstrate how the proceedings before a municipal judge, where plaintiff had the opportunity to contest the alleged violation and chose to plead no contest, can amount to a substantive due process violation. Even assuming that defendants improperly cited plaintiff for improper motives, plaintiff was accorded an opportunity to contest the citations before an impartial judge who is not named as a defendant. Defendants' motion for summary judgment on this claim is granted.

3. Equal Protection

Plaintiff does not argue that he was a member of a suspect class or that he was deprived of a fundamental right. Rather, plaintiff argues that he was treated in a manner contrary to law and that he has not yet had an opportunity take depositions and explore discovery to show how defendants have never acted in the manner they did against plaintiff with other developers. Essentially plaintiff argues that he is a class of one singled out by some ill will or spiteful effort.

The Supreme Court has stated:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989). In so doing, we have explained that " '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' " Sioux City Bridge Co., supra, at 445, 43 S.Ct. 190 (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918)).

Village of Willowbrook v. Olech, 528 U.S. 562, 564.

It is unclear what laws defendants allegedly violated in their treatment of plaintiff, but plaintiff does refer to refusals to provide administrative hearings and making intentionally misleading

false statements during legal proceedings (without explicitly stating in his memo what those statements were).

Plaintiff provides no basis for demonstrating he was unlawfully deprived of a temporary certificate of occupancy given the discretionary nature of the certificate, but if plaintiff can produce evidence that all other developers were given certificates under similar circumstances, he might have a claim. His claims regarding the administrative hearings are confusing and need to be fleshed out. Thus, plaintiff will be permitted to take discovery with respect to his equal protection claim and the motion for summary judgment is denied at this time.

4.   First Amendment

Plaintiff asserts that his right of access to the courts has been violated because the defendants punished him for exercising his speech rights and refusing access to his administrative rights when plaintiff initially filed his LUBA appeal.

Plaintiff did not raise his First Amendment claim until the third amended complaint. In allowing the plaintiff to file the third amended complaint combining the complaints from the two actions filed in this court, the court did not allow plaintiff to plead new claims for relief.

The third amended complaint was filed on April 26, 2004. The LUBA appeal occurred on September 4, 1998. The actions giving rise to the First Amendment claim began well prior to two years before

15 - ORDER

April 26, 2004. The court has given plaintiff ample opportunity to plead his claims and it would be prejudicial after all these years to force defendants to defend the claim that has not yet been clearly alleged. The motion for summary judgment is granted with respect to this claim.

B. Sanctions

As noted above, defendants also filed a motion to dismiss simply relying on the arguments made in the memo in support of summary judgment. Plaintiff's counsel took issue with the motion, opposed it as violative of the court rules and the court's order on the timing for filing dispositive motions. Plaintiff has suffered no prejudice because he only needed to respond to the summary judgment motion to oppose the motion to dismiss. The motion for sanctions (#180) is denied.

CONCLUSION

For the reasons stated above, defendants' motions for summary judgment (#159) or alternatively to dismiss (#172) are granted in part and denied in part as noted above.

DATED this 9th day of August, 2005.

_____
Michael R. Hogan
United States District Judge