IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IAN McELROY,                          )
                                      )
                  Plaintiff,          )      Civil No. 00-6318-HO
                                      )
            v.                        )      ORDER
                                      )
CITY OF CORVALLIS, et al.,            )
                                      )
                  Defendants.         )

The case arises from the development plan for the Rivergreen Office Park in Corvallis. Plaintiff was a managing member of the Rivergreen Office Park, LLC until approximately February 22, 1999. The operative complaint, finally filed through counsel after several amendments, consists of various allegations indicating violations of the Uniform Building Code, the Land Development Code, the ADA, etc. The gist of the complaint appears to be that the defendants would stop at nothing to deny plaintiff a certificate of occupancy for his building project and retaliated against plaintiff for his decision to take legal action. Plaintiff alleges he suffered significant harm as a result of defendants' actions and

seeks $3,979,000 for economic damages and $2,000,000 in non-economic damages.  Plaintiff also seeks $12,000,000 in punitive damages.

The court later whittled plaintiff's claims to just one for denial of equal protection and permitted discovery to go forward on such claim.  The court presently has numerous motions before it.


A.   Motion to Strike Plaintiff's Expert Reports (#233)

Defendants move to strike the expert disclosure reports submitted by plaintiff contending (1) the reports contain inadmissable legal conclusions by persons who are unqualified to give legal opinions; (2) the reports contain irrelevant opinions or opinions on issues already decided by the court adversely to the plaintiff; and (3) plaintiff has failed to produce the documents requested by defendants relating to the information upon which the plaintiff's experts rely.

Plaintiff has submitted six expert disclosure reports. Defendant specifically objects to the reports as follows:


(1)  Darrell Ackerman

Ackerman is a consultant and designee for the Oregon Disabilities Commission.  Defendants complain that Ackerman makes inadmissable legal conclusions that a courtyard located near building "B" at the Rivergreen office park site is in violation of Section 1103.1 of the Oregon Structural Speciality Code and that

2 - ORDER

the City of Corvallis does not have statutory authority to waive building code requirements, because he is not an attorney qualified to make such conclusions.

### 2.   Patrick Bridges

Bridges is the Director of Technology and Codes of the Oregon Home Builders Association.  Bridges opines that:

--Corvallis cannot impose a "condition" which conflicts the Oregon Structural Specialty Code(OSSC) and that "some" condition of approval of the Rivergreen Office Park project conflicts with the OSSC;

--Corvallis refused to issue a temporary certificate of occupancy to the plaintiff as a "blatant attempt to circumvent the requirements for the accessible route."

--Corvallis violated the "bonding provisions" of section 3311 of the OSSC by allegedly requiring "cash security" rather than a bond from plaintiff.

--Corvallis violated Oregon law by not granting plaintiff an appeal before the Corvallis Building and Fire Code Board of Appeals.

--Corvallis unlawfully issued a final certificate of occupancy while the site was in non-compliance with the OSSC.

Defendants challenge these conclusions as inadmissable legal conclusions, because Bridges is not an attorney qualified to make

such conclusions even if such conclusions were admissible, among other reasons.

### 3.   Bryan W. Cavaness

Cavaness is an attorney.  Cavaness concludes that the building code enforcement process followed with respect to plaintiff by Corvallis was "criminal" rather than "civil" by nature and that the City cannot criminally prosecute code offenses.  Defendants object because the opinion ignores the fact that the City only sought the penalty authorized by the OSCC itself and thus the opinion is irrelevant.  Additionally, defendants contend that the court has already held that there was nothing unlawful about the citation process.[1]  Moreover, defendants argue, plaintiff can make legal arguments pro se or through counsel but not through evidence in the form of witness opinion.

Cavaness also concludes that the City improperly cited plaintiff for illegally occupying the building at the site, but fails to note the court already decided this issue adverse to plaintiff.

### 4.   Kenneth Gustafson

Gustafson is an accountant who opines on the lost profits allegedly suffered by plaintiff as a result of the actions of the

---

[1]The ruling related to plaintiff's due process claims regarding the citations only.

City.    Defendants move to strike this report contending that plaintiff has failed to produce financial documents relating to the Rivergreen Office Park, LLC, as requested by defendants and on which Gustafson apparently based part of his opinion.    Defendants also contend that the opinion is irrelevant as plaintiff cannot seek lost profits for the LLC, but it appears the opinion is based on plaintiff's losses due to his being forced to take a reduced share in the LLC.

### 5.   Jim Franceus

Franceus is a financial planner who opines concerning the valuation of the LLC and thus the value of plaintiff's lost ownership.    Defendants move to strike contending they have not received requested documents regarding valuation.

### 6.   Ian McElroy

Plaintiff submits his own "expert" report.    Defendants object to the conclusion offered that the City unlawfully enforced a condition (condition 21A) because the condition had no legal effect while it was being enforced.    Defendants agree plaintiff may argue his legal opinions, but he cannot testify as an expert regarding legal conclusions.

Plaintiff responds that he is seeking new legal counsel and that his new counsel

5 - ORDER

will file all necessary pleadings and responses,
including amended expert witness reports. Any
deficiencies in the prior reports that may exist would be
cured in the new amended reports and would be filed by
the deadline. In the event new counsel is not retained,
plaintiff would file a written objection memorandum with
the court along with amended expert witness reports.

The court has not located any further responsive material to
this particular motion and the motion is granted.


B.   Motion to Strike Plaintiff's Fifth amended Complaint (#242)

Plaintiff and McElroy Construction, Inc. filed an 89 page
Fifth Amended Complaint on August 15, 2006, without leave to do so,
alleging eight counts of violation of his right to equal
protection. Plaintiff continues to include claims on behalf of
McElroy Construction despite his inability to represent such entity
and dismissal of that entities' claims long ago. Further,
plaintiff adds Ken Gibb as a defendant despite failure to include
him in the Fourth Amended Complaint and preclusion of the claims
against him now based on the statute of limitations. Plaintiff
also adds new legal issues and theories very late in this old case.
To the extent the complaint has been filed, the motion to strike is
granted.


C.   Plaintiff's Motions Regarding the Fifth Amended Complaint
(#336)

Plaintiff also moves for: (1) leave to file the Fifth Amended
Complaint; (2) an order denying the motion to strike the complaint;

6 - ORDER

(3) an order directing defendants to answer the complaint; and (4) an order denying the motion for summary judgment against the Fourth Amended Complaint as moot.

Allowing yet another complaint after substantial completion of discovery, after a motion for summary judgment has been filed, after dismissal of one plaintiff, a defendant, and many claims only to have them revived is far too prejudicial to defendants.

The Fourth Amended Complaint was drafted by an attorney and plaintiff contends that defendants continued to withhold key discovery (even to this date) making it impossible to draft a clear concise complaint at the time.[2]  Plaintiff apparently agrees that the Fourth Amended Complaint is confusing and needs to be fleshed out, but filing another confusing complaint will not solve this problem.  The time has come for summary judgment and to flesh out the evidence, not the allegations.

Plaintiff also contends that defendants stipulated to the filing of the Fifth Amended Complaint or promised to only answer the Fourth Amended Complaint and not move against it or something to that effect.  Plaintiff also argues that discovery revealed that due process and First Amendment claims should be brought back in to the case.

Defendants concede that about a year and a half ago, they were prepared to agree to the filing of a Fifth Amended Complaint, but

---

[2]The Fifth Amended complaint is anything but clear and concise.

that they did not agree to the filing of the amended complaint more than a year later.[3]  Complaints are not, generally, the product of discovery–they guide discovery.  Because the amended complaint was not filed, defendants simply proceeded with discovery.  Plaintiff's motions for: (1)  leave to file the Fifth Amended Complaint; (2) an order denying the motion to strike the complaint; (3) an order directing defendants to answer the complaint; and (4) an order denying the motion for summary judgment against the Fourth Amended Complaint as moot is denied.


D.    Plaintiff's Motion for the Court to Release Documents held In Camera (#342)

In July of 2006 the parties informally raised several discovery issues which were not formally heard by the court.  One of the issues involved documents withheld by defendants based on privilege.  At that time, defendants asserted that many of the documents sought are attorney-client privileged.  Plaintiff contended that the city attorneys, two of whom are named as defendants, were involved in most of the challenged decisions and the discussions amount to business advice and ministerial decisions.  Plaintiff also argued that defendant had raised the

---

[3]Defendants point to a September 2005 draft stipulation from plaintiff's then counsel noting that plaintiff shall file a Fifth Amended Complaint "as soon as reasonably possible."  However, the stipulation was not signed by counsel because of other problems.  It appears the intention of the parties was to have the Fifth Amended Complaint filed by October of 2005.

affirmative defense of reliance on legal advice and thus waived the privilege (without citing authority).

The documents are comprised of memos to and from counsel (including counsel currently representing defendants in this case as well as the city attorney).  Many of the documents are updates on the ongoing litigation with McElroy in the various forums or development of strategy regarding the litigation.  Some documents also deal with attorney advice and research regarding consent searches and administrative searches, etc.

Plaintiff states that he served four requests for production resulting in "volumes of documents" produced, but not all documents related to the core dispute in this case.  Plaintiff claims he saw Jason Montgomery (defense counsel) hold and retain

> a substantial handful of documents he just retrieved from
> several boxes of Corvallis City documents containing the
> files of the Rivergreen Office Park project.   Mr.
> Montgomery stated to the plaintiff that he retrieved said
> documents from the boxes and files claiming they were
> privileged and thus would be withheld from plaintiff.
> Then, in response to plaintiff's request for production
> of documents, Mr. Montgomery allowed plaintiff to go
> through the remaining documents in the same boxes.

Plaintiff claims the documents are evidence of the misconduct, plans, directions, actions, and all other events of all defendants together for the purpose of barring plaintiff from allowing occupancy at the Rivergreen Office Park in October 1998 and evidence of subsequent disputed actions that occurred since October 98 regarding the project.  Plaintiff contends that the documents "indicate and explain all of the who, how, what, where, when, and

9 - ORDER

why's about all the defendants actions, omissions that intentionally took place which harmed plaintiff as alleged in the five complaints in this case." Plaintiff goes so far as to argue that the "evidence, in and of itself, demonstrates that the correspondence cannot be considered privileged communication." Plaintiff believes the documents are evidence of how the City attorneys advised the City to seize control of the plaintiff, how to take action in conflict with the law, how to circumvent the Constitution, and how to cover up their nefarious activities.

Plaintiff states that he seeks communications that were created prior to his filing of the lawsuit on October 6, 2000, before defendants involved Bob Franz' firm including communications by City attorneys. Defendants respond that plaintiff does not know what is in the documents, but that even if it is illegitimate advice, it still does not lose its character as privileged discussions.

Plaintiff does not raise any issues of waiver and there is no discussion of the reliance on legal advice defense which would waive the privilege. The court will preclude defendants from relying on any of the documents for such a defense, but some of the documents are actually post-filing of the case from or to Franz's office. The other documents are case updates and advice regarding the underlying litigation and discovery or preliminary drafts of pleadings in those cases with McElroy. Whether the advice is correct or "illegitimate" does not waive any privilege in and of

10 - ORDER

itself.  These documents are not a smoking gun and if defendants took illegal actions against plaintiff those actions will speak for themselves.  Proof of underlying advice to take those actions is not necessary (for plaintiff's case). The motion is denied.

E.   Motion to Compel/Application for Order to Show Cause (#348)

Defendants move to compel Hugh White to comply with a subpoena served on him and also move for an order to show cause why White should not be held in contempt for willfully refusing to produce the documents requested.

Defendants served a subpoena duces tecum on White requesting all documents relating to the work history of Ian McElroy and business transactions with Ian McElroy.  Plaintiff responded to defendants' counsel stating that he instructed White not to respond and to await further instruction from Judge Hogan because a motion to quash may be filed based on timing.  No motion to quash was filed and defendants twice reminded White to respond.  White eventually responded by stating he had no such records.

Defendants note correspondence indicative of proposed business transactions with Rivergreen LLC.  In addition, plaintiff stated at his deposition that he managed projects for White and that he was employed by White.  Accordingly, defendants contend White's claims of lack of documents is disingenuous.

Plaintiff objects to the motion because he did not get a copy of the subpoena or communications with White, and that defense

11 - ORDER

counsel's communication were thus done in bad faith and "smacks of professional discourteousness."  Plaintiff now claims that he and White "have always been willing to accomplish whatever is required in this matter."

However, plaintiff continues in his response that he objects to the subpoena as being too vague, over broad, unduly burdensome, and mostly irrelevant to these proceedings.  But it appears that White will produce whatever records exist that are relevant.

Plaintiff's arguments are inappropriate because it is White who was subpoenaed and to the extent plaintiff provided him advice-such borders on the unauthorized practice of law.  Also it is White who must produce records and plaintiff cannot collaborate with White to determine which records will be withheld.  The documents are relevant to damages.  The motion is granted and White should be ordered to produce whatever documents he has responsive to the request.  However, White should be given a chance to respond to the court's order to produce before a show cause order is issued or sanctions are considered.[4]


F.    Motion to Strike Certain Evidence Submitted by Plaintiff in
Support of Plaintiff's Opposition to Defendants' Second Motion for

---

[4]Based on plaintiff's response, defendants also seek sanctions against him for their attorney fees in bringing this motion.  That request is denied.

12 - ORDER

Summary Judgment Against Plaintiff's Fourth Amended Complaint
(#377)

Defendants move to strike the declaration of Ian McElroy
(#346), Plaintiff's exhibit 103 attached to the declaration, and
the affidavit of James D. Gallant, M.D. (Exhibit 113 to
declaration).

1.  Plaintiff's Declaration

Defendants contend that the declaration contains numerous
facts upon which plaintiff does not have personal knowledge, but
that due to the length of the document and sheer number of
defective statements, that it would be unduly burdensome to
demonstrate each problem. Accordingly, defendants decline to cite
even one instance. The court will only consider statements it
finds admissible for purposes of summary judgment but the court
declines to strike the document. The motion is denied with respect
to plaintiff's declaration.

2.  Plaintiff's Exhibit 103

This is a transcript, purportedly made by plaintiff himself,
of an audio recording of a March 1, 2000 hearing before the
Building Code Structures Board. The original recording is not
offered (with Ex. 103) and the transcript is not a certified copy

certified by the custodian or other person authorized to make certification.  The motion to strike exhibit 103 is granted.[5]


   3.   Affidavit of James D. Gallant, M.D.

     In paragraphs 11, 12 and 13, Dr. Gallant, who leased space at the Rivergreen Office Park site, relates his conversations with Linda Sarnoff, then Planning Manager for the City of Corvallis. Dr. Gallant notes that Sarnoff told him, during a casual dinner, that the dispute was not about the stated refusal to comply with dirt and landscape issues, but was really an attempt to harass McElroy.  Defendants seek to strike these paragraphs as inadmissible hearsay, because Sarnoff lacks personal knowledge of these matters (and has denied that she made them anyway), and because they are irrelevant because they do not identify any particular City officials or any of the defendants.  Plaintiff claims that these are the admissions of a party opponent even though Sarnoff is not a defendant.

     Under Fed. R. Ev. 801(d)(2)(C) and (D) A statement is not hearsay if the statement is offered against a party and is a statement by a person authorized by the party to make a statement concerning the subject or if it is a statement by the party's agent

---

     [5]Plaintiff later submitted a CD copy of the original audio tape. Plaintiff had an audio engineer (Robert Gwynn of Palatine Recordings) copy the tape and improve intelligibility.  Defendants have not moved to strike and the court does not opine as to its admissibility. Plaintiff also submits another transcript apparently of him transcribing the CD.

or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. While the statement does not appear to be an authorized statement, it does appear to be a statement concerning a matter of City planning. The statement does not appear to be made in an employment situation, but it concerns the scope of her employment and it was made while Sarnoff was the City's Planning Manager. The motion to strike paragraphs 11, 12, and 13 of the declaration is denied.[6]

G.   Plaintiff's Dispositive Motions (#381)

Plaintiff moves to: (1) Strike defendants' motion for summary judgment; and (2) Strike all defendants defense arguments and affirmative defenses.

Plaintiff makes a difficult to follow argument that Bob Franz lied to a third party (an attorney for the mortgage company (Artesia Mortgage) financing the project) and that defendants withheld important discovery showing that just before the City went after plaintiff for allowing occupancy without a certificate of occupancy, the City, through Lee March, informed Artesia that the buildings were approved for occupancy.[7]   Accordingly, plaintiff

---

[6]In addition, to the extent plaintiff offers the statement as impeachment evidence, it is allowed to the extent statements of Sarnoff are considered. Sarnoff has submitted an affidavit providing a detailed account denying the statement was made.

[7]This is how plaintiff gets to Bob Franz lying because he later told the attorney for Artesia that there were issues holding up the
(continued...)

seeks the above noted sanctions.  It appears that March's position that as of the date of the letter to Artesia (July 13, 1999), <u>temporary</u> occupancy was approved, is a misstatement.  As of June 30, 1999, the TOC had expired.  Bob Franz's email to Artesia's attorney does not appear to be materially inaccurate.  Moreover, it does not appear that defendants wrongfully withheld discovery on the issue as plaintiff does not point to requests for the documents and some of them are attorney/client documents.  To the extent plaintiff now has the documents (obtained by other means), the attorney/client issue is moot.  There is nothing extraordinary enough to justify the sanctions plaintiff requests.  In addition, defendants request sanctions for having to respond to this motion and that request is also denied.


<u>H.   Plaintiff's Motion for An Order Directing that Ken Gibb Shall be Brought Back into this Litigation (#419)</u>

Plaintiff failed to include Ken Gibb as a defendant in the caption of his Fourth Amended Complaint and plaintiff's counsel at the time indicated that this was an error.  However, the body of the Fourth Amended Complaint does not refer to Gibb either.  While plaintiff's proposed Fifth Amended Complaint did seek to include Gibb as a defendant, a significant amount of time passed before

---

[7](...continued)
final certificate and that plaintiff had allowed illegal occupancy.

plaintiff sought to obtain leave to file the amended complaint.
Well over a year later, plaintiff's formal request to add Gibb as
a defendant is highly prejudicial given the amount of discovery and
motions practice that has taken place.   Plaintiff's motion is
denied.


I.   Plaintiff's Motion for Reconsideration and Motion for Leave to
File Sixth Amended Complaint (#420)

     Before the court could rule on plaintiff's motion for leave to
file a Fifth Amended Complaint, plaintiff seeks leave to file a
Sixth Amended Complaint and to revive certain claims already
dismissed on summary judgment.   Plaintiff's attempts to use
discovery and dispositive motions practice as a fishing expedition
to assert claims confuses the purpose of the complaint.   A party
should have sufficient information for filing a complaint so as to
properly assert any given claim, but the allegations of the
complaint are what drives discovery.   The court previously
dismissed plaintiff's due process claims on legal grounds, not
factual grounds.   The record in this case establishes that only a
claim for violation of plaintiff's equal protection rights is
appropriate.[8]   Further amendment of the complaint is not necessary.

_____

     [8]For instance, plaintiff takes issue with the court's finding
that issuance of the temporary certificates of occupancy is
discretionary such that plaintiff does not have a protected property
interest subject to the Fourteenth Amendment.  But that does not mean
that the exercise of that discretion to deny certificates doesn't
                                        (continued...)

Plaintiff's motion for reconsideration is granted and upon reconsideration the court's order granting summary judgment as to plaintiff's due process claims is affirmed. Plaintiff's motion for leave to file a Sixth Amended Complaint is denied.

J.  Motion for Summary Judgment on Plaintiff's Fourth Amended Complaint (#245)

As noted above, the court has only allowed plaintiff to pursue one claim for relief for violation of his equal protections rights. The court stated in it order dismissing nearly all of plaintiff's claims:

> Plaintiff does not argue that he was a member of a suspect class or that he was deprived of a fundamental right. Rather, plaintiff argues that he was treated in a manner contrary to law and that he has not yet had an opportunity take depositions and explore discovery to show how defendants have never acted in the manner they did against plaintiff with other developers. Essentially plaintiff argues that he is a class of one singled out by some ill will or spiteful effort.
> The Supreme Court has stated:
> > Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989). In so doing, we have explained that " '[t]he purpose

---

[8](...continued)
provide evidence for plaintiff's equal protection claim by demonstrating an unconstitutional animus toward plaintiff.

of the equal protection clause of the
Fourteenth Amendment is to secure every person
within the State's jurisdiction against
intentional and arbitrary discrimination,
whether occasioned by express terms of a
statute or by its improper execution through
duly constituted agents.' " <u>Sioux City Bridge
Co.</u>, <u>supra</u>, at 445, 43 S.Ct. 190 (quoting
<u>Sunday Lake Iron Co. v. Township of Wakefield</u>,
247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154
(1918)).
<u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564.
It is unclear what laws defendants allegedly
violated in their treatment of plaintiff, but plaintiff
does refer to refusals to provide administrative hearings
and making intentionally misleading false statements
during legal proceedings (without explicitly stating in
his memo what those statements were).
Plaintiff provides no basis for demonstrating he was
unlawfully deprived of a temporary certificate of
occupancy given the discretionary nature of the
certificate, but if plaintiff can produce evidence that
all other developers were given certificates under
similar circumstances, he might have a claim. His claims
regarding the administrative hearings are confusing and
need to be fleshed out. Thus, plaintiff will be
permitted to take discovery with respect to his equal
protection claim and the motion for summary judgment is
denied at this time.

Order (#201) dated August 9, 2005.

Discovery has been substantially completed and defendants now

move for summary judgment as to plaintiff's equal protection claim.

The equal protection clause ensures that all persons similarly

situated should be treated alike. <u>Squaw Valley Dev. Co. v.

Goldberg</u>, 375 F.3d 936, 944 (9th Cir. 2004). The Supreme Court

formally recognized class-of-one equal protection actions in the

<u>Olech</u> case. In <u>Olech</u>, a municipality conditioned water service for

a property on the plaintiff-owner's granting a 33-foot easement,

even though it required only a 15-foot easement from every other

19 - ORDER

property owner. Olech, 528 U.S. at 563.   The Court allowed the plaintiff to proceed on the class-of-one theory, recognizing claims where a plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference. Id. at 564. The Court stated that allegations of irrational and wholly arbitrary treatment, even without allegations of improper subjective motive, were sufficient to state a claim for relief under equal protection analysis. Id. at 565.   In concurring, Justice Breyer expressed concern that Olech would transform ordinary violations of state or local law into constitutional cases. See id. at 565-66. Justice Breyer, nonetheless, concurred in the judgment because the plaintiff had alleged that city officials acted with malice or ill will, which distinguished the claim from run-of-the-mill zoning cases. Id. at 566.

Based on Olech, the Ninth Circuit has applied the class-of-one theory in the regulatory land-use context to forbid government actions that are arbitrary, irrational, or malicious. See Squaw Valley, 375 F.3d at 944-48; see also Valley Outdoor, Inc. v. City of Riverside, 446 F.3d 948, 955 (9th Cir. 2006) (applying class-of-one theory to city's denial of billboard permits).   In Squaw Valley, the plaintiffs, who operated a ski resort, claimed that two employees working for the state water quality authority subjected them to selective and over-zealous regulatory oversight. 375 F.3d at 938. The Ninth Circuit applied rational basis scrutiny

20 - ORDER

to review the acts of the government regulators. Id. at 944. The
Squaw Valley court held that acts that are malicious, irrational,
or plainly arbitrary do not have a rational basis. Id. In addition,
the court held that in an equal protection claim based on selective
enforcement of the law, a plaintiff can show that a defendant's
alleged rational basis for his acts is a pretext for an
impermissible motive. Id. The Ninth Circuit denied summary
judgment where, even though an actor set forth a rational basis for
its actions, there was evidence of acting out of personal
animosity. See id. at 946-47. As noted above, Sarnoff's statement
should be sufficient in and of itself to preclude summary judgment
assuming some evidence of selective enforcement is presented.

> The paradigmatic class-of-one case should be one in which
> a public official, for some improper motive, "comes down
> hard on a hapless private citizen." Lauth, 424 F.3d at
> 633. This was the type of case decided in Olech and Squaw
> Valley.

Engquist v. Oregon Dept. of Agriculture, 478 F.3d 985, 995 (9th Cir.
2007).

Gallant declares that Sarnoff, at the time she was the
Planning Manager for the City of Corvallis, stated "the dispute
between Mr. McElroy and the City of Corvallis was not about dirt or
landscape issues only, but more so, that Mr. McElroy made the City
building officials angry for his ongoing challenges of their
demands, and they intended to hassle him and obstruct his business
and ability to complete the Rivergreen project." Declaration of
James D. Gallant (attached to #103) at ¶ 11. Gallant later states

21 - ORDER

that Sarnoff told him six months later that the "ongoing disputes
with Mr. McElroy continued to be more about Mr. McElroy than about
the construction issues on the project." Id. at ¶ 12.

The defendants offer the affidavit of Sarnoff in which she
denies making the statements. Sarnoff attributes the above
characterizations to Gallant himself due to Gallant's own
frustration with the delay and uncertainty in occupying office
space at the site because of the certificate of occupancy problems.
See Affidavit of Linda Sarnoff (#379). However, this does not
preclude issues of fact, but merely goes to the weight of the
evidence for the jury's consideration.[9]

It should be noted that defendants also raise issues of
standing to challenge the failure to issue certificates of
occupancy (which comprise some of the alleged instances of equal
protection violation) since it is the owner of the building who was
injured. However, as noted in previous orders, the City
appropriately sanctioned plaintiff under Corvallis Municipal Code,
§ 5.03.010.060 which provides that a person is liable for conduct
constituting an offense which he performs or causes to be performed
in the name of or on behalf of a corporation to the same extent as

---

[9]Defendants mischaracterize the law on this issue by asserting
that plaintiff must prove that there is absolutely no hypothetical or
actual rational basis for the difference in treatment. See Memo
(#250) at pp. 3-4 (citing primarily Seventh Circuit case law).
Generally there must be no rational basis for the action at issue, but
a plaintiff may also prevail by showing the alleged rational basis is
a pretext and that animus played a role.

if such conduct were performed in his own behalf.  In other words, since the City chose to cite plaintiff for violations of occupancy, it cannot now claim he has no standing to challenge failure to issue certificates of occupancy with respect to his equal protection claim.

During discovery, plaintiff identified 12 actions that violated his equal protection rights.  Defendants go through each of the 12 alleged actions in an attempt to dispose of the case. However, much of the argument is the same.  For instance plaintiff identifies non-party Mike Fegles, acting on behalf of defendant Lee March, as denying the a temporary certificate on October 8, 1998, despite all conditions being met.  Defendants contend this does not show different treatment from others, plaintiff lacks standing to complain about it, that the action was lawful, that others would also get denied for failing to comply with a grading and fill conditions, that there was no intent to treat differently, that there was a rational basis for the decision, and that there is no municipal liability for the action.  However, the Sarnoff statements, made around the same time, if believed, could lead to inferences that the reasons for denial were not because of grading issues but because of an intent to harass plaintiff personally. Sarnoff allegedly supported plaintiff's position, but could not speak up without compromising her position with the City indicating a policy on the part of the City or policymakers regarding the City's land use.  Plaintiff presents evidence of zealous

23 - ORDER

enforcement that may appear to single him out as well because he raised issues of violation of the ADA if the conditions were enforced. <u>See</u> Ex. 118 and 119 (attached to #404). While plaintiff identifies many actions that may have been legitimate,[10] there is an issue of fact as to whether the defendants zealous enforcement, citations, requirement of surety bonds from plaintiff personally, and legal action were in fact motivated by an animus toward plaintiff. Of course a jury may not believe Gallant's statements especially given Sarnoff's denial of the statements, even though she no longer works as the Planning Manager. However, the material issue of fact is now established and a trier of fact will need to sort this out. Plaintiff also shows that despite the fact the certificates continued to be denied when he was no longer managing the LLC, the enforcement and "prosecution" style pursued against the LLC was not as overbearing. In short, there is an issue of fact as to whether defendants were simply relying on rational interpretation of building codes in their treatment of plaintiff or whether they were upset with his pushing concerns regarding the ADA to the point where they let personal animosity govern their discretion to withhold the certificates. Summary judgment on the equal protection claim is denied.

---

[10]Indeed, plaintiff goes to great lengths to portray statements of defendants as outright lies and blatant reversal of positions when convenient to persecuting him when in fact that is not the case.

<u>CONCLUSION</u>

For the reasons stated above, the motions before the court are granted or denied as follows: Motion number 233 is granted; Motion number 242 is granted; Motion number 336 is denied; Motion number 342 is denied; Motion number 348 is granted in part; Motion number 377 is granted in part; Motion number 381 is denied; Motion number 419 is denied; Motion number 420 is denied; and Motion number 245 is denied.


DATED this ___17th___ day of April, 2007.

___s/ Michael R. Hogan_____
United States District Judge


25 - ORDER